UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**WILLIE LOUIS FARMER,**

       **Plaintiff,**

v.                                                                                          **Case No: 6:23-cv-248-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM OF DECISION

This cause is before the Court on Claimant's appeal of an administrative decision denying his application for Supplemental Security Income (SSI). The administrative law judge (ALJ) held a hearing on April 5, 2022, at which Plaintiff was represented by counsel and an impartial vocational expert testified. R. 32-62. On June 2, 2022, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act since June 23, 2020, the date the application was filed. R. 9-25. The Appeals Council denied Plaintiff's request for review on January 4, 2023. R. 2-8.

Having considered the parties' memoranda (Docs. 17, 20), the Court concludes, for the reasons set forth herein, that the Commissioner's decision is due to be **REVERSED** and **REMANDED**.

I.      **Issues on Appeal**

Claimant states his argument by reference to two issues:

1) The ALJ's decision is not supported by substantial evidence because the ALJ mistakenly evaluated the opinion of Dr. Acharjee as if it had been issued on the wrong date. *See* Doc. 17 at 4-9; and

2) The ALJ failed to apply the correct legal standards to the opinion of Dr. Acharjee. *See* Doc. 17 at 9-18.

However, the Commissioner responded to those arguments as though they were a single argument, asserting broadly that, "Substantial evidence supports the ALJ's RFC determination that Plaintiff remained capable of performing a range of light work and was, thus, not disabled." Doc. 20 at 4-16.

II.     **Standard of Review**

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted). "With respect to the Commissioner's legal conclusions, however, our review is *de novo*." *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

III.    **Discussion**

The parties' arguments pass like ships in the night.

On the one hand, Claimant argues that the ALJ mistakenly evaluated the opinion of Dr. Acharjee—Claimant's treating cardiologist—as though it had been issued a year later. And,

building on that perceived error, Claimant argues that the ALJ conducted an insufficient supportability analysis and failed completely to conduct a consistency analysis. On the other hand, the Commissioner asserts that the ALJ made no mistake concerning the date of the opinion at issue and that sufficient evidence supports the analysis the ALJ did make.

As will be explained, Claimant is just plain wrong in his "mistaken date" argument, but that leads inexorably to the conclusion that the ALJ simply did not weigh the one clear opinion of Dr. Acharjee, i.e., the 2020 Medical Source Cardiac Questionnaire (MSCQ). Strangely, because the parties spill significant ink on a purported (and perhaps inconsequential) mistake concerning date, neither spend much time on what the opinions of Dr. Acharjee are and which one the ALJ weighed. But there lies the point—there appear to be at least two opinions, and the ALJ only weighed one. That was error.

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of the treating, examining, and non-examining medical sources. 20 C.F.R. §§ 404.1545(a)(1), (3); 416.945(a)(1), (3); *see also Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).[1] The consideration of medical source opinions is an integral part of steps four and five of the sequential evaluation process.

---

[1] Here, in assessing the Claimant's RFC, the ALJ stated:

After careful consideration of the entire record, I find that the claimant

The Social Security Administration revised its regulations regarding the consideration of medical evidence—with those revisions applicable to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Claimant filed his claim after March 22, 2017, 20 C.F.R. § 404.150c and 20 C.F.R. § 416.920c are applicable in this case. Under these provisions, an ALJ must apply the same factors in the consideration of the opinions from all medical sources and administrative medial findings, rather than affording specific evidentiary weight to any particular provider's opinions. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ must consider: 1) supportability; 2) consistency; 3) relationship with the claimant;[2] 4) specialization; and 5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those two factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between

---

has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 416.967(b). The claimant can frequently operate foot controls with his right lower extremity. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme cold, extreme heat, and workplace hazards such as bladed and sharp instruments, moving machinery, moving mechanical parts, and unprotected heights.

R. 15.

[2] This factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extend of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3)(i)–(v); 416.920c(c)(3)(i)–(v).

a medical source's opinion and other evidence within the record.[3] In other words, the ALJ's analysis is directed to whether the medical source's opinion is supported by the source's own records and consistent with the other evidence of record—familiar concepts within the framework of social security litigation.

The ALJ may, but is not required to, explain how the ALJ considered the remaining three factors (relationship with claimant, specialization, and "other factors"). 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) ("The new regulations are not inconsistent with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding.'") (quoting *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2017) (per curiam) and citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same)).

In relevant part, the ALJ stated the following with respect to Dr. Acharjee:

> ***On October 19, 2020, Dr. Acharjee completing a medical source cardiac questionnaire***. ***He stated the claimant experiences limitations in his ability to maintain a normal pace and sustain physical activities, secondary to exertional dyspnea with mild to moderate activity*** (Exhibit 7F).
>
> ***
>
> ***On October 8, 2021, the claimant underwent a left heart catheterization***, right heart catheterization, coronary angiography, PCI of proximal and mild LAD, and venography of his right upper extremity. The angiography indicated ischemic cardiomyopathy with high-risk abnormal stress test. There was evidence of dissection in proximal LAD with critical InStent restenosis in mid-LAD and diffuse subtotal occlusion of apical LAD. The circumflex and right coronary arteries were

---

[3] The regulations provide, in relevant part, that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1)–(2); 416.920c(c)(1)–(2).

> patent. There was successful PCI to proximal and mid-LAD with placement of two overlapping drug-eluting stents (Exhibits 17F/2-4, 11-13 and 19F/81-83). The claimant was referred to cardiac rehabilitation (Exhibit 17F/22).
>
> The claimant began cardiac rehabilitation on November 11, 2021 (Exhibits 19F/113-115 and 19F/54-56). He continued in cardiac rehabilitation through February 2022 (Exhibits 19F/92-112 and 21F/4-53). ***At a follow up examination with Dr. Acharjee on November 24, 2021***, the claimant's blood pressure was 116/68. It was reported that he was doing 25 minutes on the exercise bike at cardiac rehab and has not used isosorbide for several weeks. He was therefore discontinued on long-acting nitrate therapy. ***Dr. Acharjee advised the claimant to stay off work while he completes cardiac rehabilitation*** (Exhibit 17F/15-18).
>
> \*\*\*
>
> ***In consideration of Dr. Acharjee's opinion that the claimant should not work until completion of cardiac rehabilitation***, ***I find this recommendation or opinion not persuasive***. It appears he is referring to the claimant's cardiac rehabilitation following his October 8, 2021, catheterization. At the time he made this opinion, it was unclear how long he would require cardiac rehabilitation. In hindsight, the claimant was in rehabilitation from November 2021 through February 2022, and he recovered in a short time (Exhibits 17F/18 and 20F/8).
>
> Further, the examination following the catheterization indicated normal blood pressure and pulse (110/76, 81 bmp). His heart rate and rhythm were regular. His heart sounds did not indicate rub of gallop. His S1 was normal and his S2 was physiologically split. No systolic or diastolic murmur was heard. There was no cyanosis or edema of his extremities. The claimant's peripheral pulses were normal (Exhibit 17F/19-22). ***These findings do not equate to disability and do not support Dr Acharjee's opinion that the claimant should not be working*** (Exhibits 17F/18 and 20F/8).

R. 18-22.

Thus, there are at least two opinions by Dr. Acharjee at issue in the ALJ's decision. First, the 2020 MSCQ in which Dr. Acharjee opines to functional limitations—clearly a medical opinion. Second, the 2021 statements by Dr. Acharjee that Claimant should not be working during cardiac

rehabilitation—perhaps a medical opinion, though perhaps an issue reserved to the Commissioner.[4]

Yet regardless of any mistake as to date or whether the "do not work" opinion is one reserved to the Commissioner, nowhere in the decision did the ALJ weigh or otherwise explicitly consider the supportability and consistency of the medical opinions set forth in Dr. Acharjee's 2020 MSCQ.  An ALJ must consider the supportability and consistency of the medical opinions of record, 20 CFR § 404.1520c(b)(2), and the failure to do so is error.  *See Bailey v. Comm'r of Soc. Sec.*, 802 F. App'x 462, 465 (11th Cir. 2020).  Claimant argues that the ALJ made an error concerning the date of the MCSQ and then attributes the ALJ's analysis concerning Dr. Acharjee's 2021 statements to the 2020 MSCQ.  This misses the mark and gives too much credit to the ALJ.  In fact, the Court finds that the ALJ made no mistake in date, the ALJ simply weighed the 2021 statements concerning inability to work and completely failed to weigh the actual medical opinions—including the functional limitations—in the 2020 MSCQ.  Further, the Commissioner's post-hoc justifications for the ALJ's failure to discuss the supportability and consistency of Dr. Acharjee's opinion are unpersuasive.  Doc. 20 at 29–32; *see Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012) ("We cannot affirm based on a post hoc rationale that might have supported the ALJ's conclusion.") (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.

---

[4] Interestingly, there is arguably a third medical opinion, the 2022 statement by Dr. Acharjee that Claimant could return to work from a cardiac perspective.  While this may support the ALJ's ultimate decision, the ALJ did not weigh it, which is error, though perhaps harmless.  While the Commissioner might argue it should not be weighed as a medical opinion, it is interesting that the ALJ weighed Dr. Acharjee's statement that Claimant should not work during rehabilitation but did not weigh Dr. Acharjee's statement that Claimant could return to work following rehabilitation.  This is further reason to remand this case for the ALJ—not the Court—to weigh these opinions and come to a properly supported determination.

1984) and *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)) (quotation omitted).

Regardless, even if the Court attributed the ALJ's analysis concerning the 2021 statements to the 2020 MSCQ (i.e., adopted Claimant's theory of a mistaken date), the ALJ conducted no consistency analysis at all—something the Commissioner implicitly concedes. *See* Doc. 20 at 12-13 (arguing that the opinion was "clearly inconsistent" but making no attempt to show that the ALJ conducted the required analysis). So, even setting aside Claimant's arguments concerning supportability and the harm from the alleged misinterpretation of date, the failure to explicitly consider consistency in regard to ay of Dr. Acharjee's opinions is error.

Further, the Court cannot say that the error was harmless. As a panel of the Eleventh Circuit recently explained, "We stress, however, that the ALJ must consider all the claimed expert, medical opinions in the record and must specify the weight—including no weight, if applicable—given to each purported medical opinion and the reasons therefor." *Bailey*, 802 F. App'x at 465 (11th Cir. 2020) (citations omitted). And at the very least, Dr. Acharjee's opinion is relevant to, and probative of, the resulting RFC. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Indeed, while the Commissioner argues that alleged mistake concerning date is harmless, the Commissioner does not actually argue that the ALJ's failure to weigh the medical opinion was harmless. As such, the Court "cannot say that the failure to [properly consider this opinion] was harmless without re-weighing the evidence and engaging in conjecture that invades the province of the ALJ." *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 592 (11th Cir. 2006); *see also, e.g., Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) ("Because the ALJ's decision lacks consideration of these factors and their impact on his ultimate conclusion as to [Claimant's] RFC, we cannot even evaluate the Commissioner's contention that the ALJ's error was harmless.").

Accordingly, the Court finds that this matter is to be remanded for further proceedings.

IV. **Conclusion**

Accordingly, upon due consideration, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment for Claimant and against the Commissioner, and close the case.

**ORDERED** in Orlando, Florida on December 29, 2023.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE